[No. 18812-7-I.   Division One.   August 10, 1987.]

PUBLIC EMPLOYEES MUTUAL INSURANCE COMPANY, *Appellant*, v. SELLEN CONSTRUCTION COMPANY, INC., *Respondent.*

*Craig H. Bennion* and *Cozen & O'Connor,* for appellant.

*Richard L. Martens, James J. Stanton,* and *Waitt, Johnson & Martens,* for respondent.

RINGOLD, A.C.J.—Public Employees Mutual Insurance Company (PEMCO) received $124,859.48 from its insurer, Sea Insurance Company (Sea), for damage done to PEMCO's microfiche records during Sellen Construction Company's remodeling of PEMCO's Evergreen Bank Building and construction of an addition. Sea brought a subrogation claim in PEMCO's name against Sellen to recover the amount it paid to PEMCO. Sellen moved to dismiss the claim arguing that under the construction contract PEMCO had waived any cause of action against Sellen for property damages and that subrogation was not permitted because Sellen was constructively insured by PEMCO's policy. The

superior court granted Sellen's motion for summary judgment dismissing the action. We reverse.

On June 15, 1982, PEMCO contracted with Sellen to remodel and expand PEMCO's Evergreen Bank Building in Seattle. PEMCO alleges that on August 13, 1982, during construction Sellen negligently allowed water to seep into a storage room containing PEMCO's microfiche files. On October 15, 1982, PEMCO named Sellen as an additional insured on its policy, but only with respect to some of Sellen's property located in a garage in PEMCO's building.

The contract between Sellen and PEMCO incorporated by reference the American Institute of Architects (AIA) document A201, 1976 edition, entitled "General Conditions of the Contract for Construction." This document governed the duties and liabilities of the parties under the contract.

## ALLOCATION OF LIABILITY

We first consider whether the contract between Sellen and PEMCO obligated PEMCO to insure the microfiche records against Sellen's negligence, making Sellen a constructive insured on the policy and relieving Sellen of liability to PEMCO for the water damage.

Article 11 of the AIA document governed the parties' respective insurance obligations. Subsection 11.3.1 provided in part:

> [T]he Owner shall purchase and maintain property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall include the interests of the Owner, the Contractor, Subcontractors and Sub–subcontractors in the Work and shall insure against the perils of fire and extended coverage and shall include "all risk" insurance for physical loss or damage including, without duplication of coverage, theft, vandalism and malicious mischief.

The "Work" was defined in subsection 1.1.3 of the contract as:

> the completed construction required by the Contract Documents and includes all labor necessary to produce

such construction, and all materials and equipment incorporated or to be incorporated in such construction.

Rather than purchase new insurance to fulfill the obligations of 11.3.1, PEMCO chose to rely upon its existing insurance coverage with Sea, which provided PEMCO with a variety of insurance coverages, including "all risk" insurance.

Paragraph 11.1, entitled "Contractor's Liability Insurance," established Sellen's obligation to provide insurance on non–Work property:

11.1.1. The Contractor shall purchase and maintain such insurance as will protect him from claims set forth below which may arise out of or result from the Contractor's operations under the Contract . . .:

. . .

.5 claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom . . .

The issue thus becomes whether the damage to the microfiche was to the "Work" under subsection 11.3.1 or to "other than the Work itself," under 11.1.1. There is no Washington case law construing the AIA contract language at issue here. Sellen relies upon several cases from other jurisdictions, *e.g., Rosemont v. Lentin Lumber Co.,* 144 Ill. App. 3d 651, 494 N.E.2d 592 (1986); *Trump–Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp.,* 106 A.D.2d 242, 485 N.Y.S.2d 65, *aff'd,* 66 N.Y.2d 779, 488 N.E.2d 115, 497 N.Y.S.2d 369 (1985), but these cases can be distinguished from the case sub judice because there was sufficient evidence in these cases that the damage was to the Work, *i.e.,* property under construction or property unambiguously located at the construction site.

Sellen also relies on *Harvey's Wagon Wheel, Inc. v. MacSween,* 96 Nev. 215, 606 P.2d 1095 (1980), a subrogation action against a contractor and several subcontractors involved with expanding and remodeling parts of a multi–structure motel. During the course of construction, Harvey's, the owner, amended its insurance policy to include as

insureds the contractor and its subcontractors, "as their interests may appear". *MacSween,* at 217. Seven months later a fire, allegedly negligently caused by the contractor or a subcontractor, severely damaged the motel, including preexisting structures not under construction. After compensating the owner for its covered losses, the insurer brought a subrogation action against the contractor and several subcontractors. The trial court found that the contractors were coinsured under the owner's insurance for even the non–Work property and granted the contractors' motion for summary judgment dismissing the insurer's subrogation claim.

*MacSween* is also distinguishable. First, there is no description of the construction contract in *MacSween,* so we cannot determine whether the contract allocated liability between the parties as clearly as did the AIA document incorporated into the PEMCO/Sellen contract. If the *MacSween* contract did not allocate liability for injuries to Work and non–Work property then there was less reason to make the distinction in the insurance coverage. Second, the contractors in *MacSween* were named as coinsureds in the owner's policy prior to the fire, so there was "no issue concerning the status of [the contractors] as coinsureds." *MacSween,* at 218. In contrast, Sellen was added as a coinsured with a limited interest to PEMCO's policy covering non–Work property months after the damage occurred, and it is an issue whether Sellen was a coinsured. Third, the *MacSween* court found that the description of the contractors' interest in the owner's policy was ambiguous, so the court construed the language in the contractors' favor according to the general rules of construction of insurance policies. In the case sub judice, Sellen's interest in PEMCO's policy covering non–Work property was clearly and unambiguously limited to its property located in a garage in PEMCO's building. Sellen did not have any other interest in the non–Work property.

A court must interpret a contract according to the intent of the parties as manifested by the words used

therein. The court cannot ignore the language agreed upon by the parties, or revise or rewrite the contract under the guise of construing it. *Wagner v. Wagner*, 95 Wn.2d 94, 621 P.2d 1279 (1980). In construing a contract, the court should apply that construction that will give each part of the instrument some effect. *Safeco Ins. Co. of Am. v. McManemy*, 72 Wn.2d 211, 432 P.2d 537 (1967); *Bremer v. Mount Vernon Sch. Dist. 320*, 34 Wn. App. 192, 660 P.2d 274 (1983).

The only interpretation of the PEMCO/Sellen contract that is consistent with these rules is that the parties intended that Sellen maintain insurance covering any damage to non–Work property caused by its construction activities. Likewise, the parties must have intended that Sellen not be included as a coinsurer on PEMCO's insurance with respect to any loss that occurred to such non–Work property. PEMCO, on the other hand, was to have purchased insurance to cover the Work, and Sellen was constructively coinsured by this policy.

Summary judgment may be granted where there is shown to be no genuine issue as to a material fact and the moving party is found to be entitled to judgment as a matter of law. CR 56(c). The burden of proving, by uncontroverted evidence, that a genuine issue does not exist is on the moving party. *E.g., Twelker v. Shannon & Wilson, Inc.*, 88 Wn.2d 473, 479, 564 P.2d 1131 (1977). Sellen has provided no evidence that the Work encompassed PEMCO's microfiche records or that the records were located at the construction site. Such evidence is essential to determine whether PEMCO was obligated to insure the records against Sellen's negligence. If the records were non–Work property, the contract did not require PEMCO to insure them and include Sellen as a coinsured. *Cf. Haemonetics Corp. v. Brophy & Phillips Co.*, ___ Mass. App. Ct. ___, 501 N.E.2d 524 (1986). Only if the records were within the Work would Sellen be entitled to summary judgment as a matter of law. *See Trump–Equitable Fifth Ave. Co. v. H.R.H. Constr. Corp., supra*.

Absent uncontroverted evidence that the microfiche records were within the Work, summary judgment is inappropriate in this action. Without such evidence the contract does not preclude Sea's subrogation action against Sellen and Sellen need not necessarily be considered constructively coinsured under PEMCO's policy with respect to the damaged microfiche files.

### WAIVER

Sellen asserts that under the construction contract PEMCO waived any cause of action against Sellen for the damage to the records. Article 11 of the AIA document included waivers of claims in certain cases. Subsection 11.3.6 stated in part:

> The Owner and Contractor waive all rights against (1) each other . . . for damages caused by fire or other perils to the extent covered by insurance obtained pursuant to this Paragraph 11.3 or any other property insurance applicable to the Work, except such rights as they may have to the proceeds of such insurance held by the Owner as trustee.

Subsection 11.4.1 provided:

> The Owner, at his option, may purchase and maintain such insurance as will insure him against loss of use of his property due to fire or other hazards, however caused. The Owner waives all rights of action against the Contractor for loss of use of his property, including consequential losses due to fire or other hazards however caused, to the extent covered by insurance under this Paragraph 11.4.

These waiver provisions do not preclude PEMCO's action against Sellen to recover for damages to the microfiche files. The waiver in subsection 11.3.6 applies only to damages to the Work. Subsection 11.4.1 does not apply because the damages sought by PEMCO are for the repair or replacement of the records, not for the loss of their use.

PEMCO has not waived its cause of action against Sellen for the damage to its records, so the waiver provisions do not preclude Sea from exercising its subrogation rights over the same cause of action.

The summary judgment of dismissal is reversed, and the cause remanded for further proceedings consistent herewith.

SWANSON and GROSSE, JJ., concur.

Review denied by Supreme Court December 2, 1987.