[No. D017893. Fourth Dist., Div. One. July 18, 1994.]

LLOYD'S UNDERWRITERS et al., Plaintiffs and Appellants, v. CRAIG AND RUSH, INC., et al., Defendants and Respondents.

**COUNSEL**

Cozen & O'Connor, M. Stuart Goldin and Sharon D. Fitch for Plaintiffs and Appellants.

Parker, Stanbury, Babcock, Combs & Bergsten, Timothy D. Lucas and Richard A. Jones for Defendants and Respondents.

## OPINION

**FROEHLICH, J.**—The single issue in this appeal is the proper interpretation of a contractual clause by which the owner of property waived certain claims for damages against its contractors. Lloyd's Underwriters et al. (appellants), the insurers for the owner, argue the damages for which they have sued respondents (the contractors for the job) fall outside the ambit of the waiver. Respondents argue that a plain reading of the clause shows any claim for such damages was waived. The trial court concluded the waiver applied. We agree and therefore affirm the judgment.

### 1. *Facts*

The relevant facts are undisputed.[1] Mercy Rehabilitation and Care Center (hereafter Owner) hired respondents Craig and Rush, Inc., and Westerly Mechanical, Inc. (collectively Contractors) to perform repairs to the roof of Owner's facility (hereafter the Work). During the job, rain intruded and caused damage to the interior of the facility.[2] Appellants, who issued property insurance to Owner, paid for the damage less the deductible owed by Owner, and then sued Contractors by way of subrogation for Contractors' alleged negligence.

Contractors moved for and obtained summary judgment based on a clause of the construction contract between Owner and Contractors (hereafter the contract). The contract, set forth on a standardized American Institute of Architects (AIA) form, allocated insurance responsibilities to the various parties. In pertinent part the contract obligated Owner to maintain property insurance on the Work and waived any claims Owner had insofar as a loss was covered by such insurance. More specifically, revised article 17, which

---

[1]Where the interpretation of a writing rests solely on the terms of the instrument without conflicting extrinsic evidence as to the parties' intentions, as in the case here, the construction of the instrument is a question of law subject to independent review by this court. (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1166 and fn. 3 [6 Cal.Rptr.2d 554].) Thus, the only issue here is a question of law without any triable issues of material fact, making summary judgment an appropriate method of disposing of the controversy (*Seaber* v. *Hotel Del Coronado* (1991) 1 Cal.App.4th 481, 487 [2 Cal.Rptr.2d 405]), subject to independent review by this court. (*Winet* v. *Price, supra.*)

[2]For purposes of this opinion we assume that the interior damage would not constitute damage to the Work, although the authorities are divided on this subject. (Compare *Public Emp. Mut. Ins.* v. *Sellen Const.* (1987) 48 Wn.App. 792 [740 P.2d 913] [rain damage to interior not deemed damage "to the Work" of roof repair] with *Village of Rosemont* v. *Lentin Lumber Co.* (1986) 144 Ill.App.3d 651 [98 Ill.Dec. 470, 494 N.E.2d 592] [damage to interior from roof collapse sufficiently related "to the Work" to be deemed damage "to the Work" for insurance purposes].)

replaced the original article 17[3] of the standard AIA construction contract, provided:

"17.3 PROPERTY INSURANCE

"17.3.1 The Owner, . . . shall purchase and maintain, property insurance in the amount of the initial Contract Sum . . . for the entire Work at the site. . . . This insurance shall include interests of the Owner, the Contractor, subcontractor, and sub-subcontractors in the Work.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"17.3.3 The Owner and Contractor waive all rights against each other . . . for damages caused by fire or other perils *to the extent covered by property insurance obtained pursuant to this Paragraph 17.3 or other property insurance applicable to the Work.*" (Italics added.)

The Work was described in the contract as the "Mercy Rehab Roof Repair."

The contract also required that Contractors maintain liability insurance (naming Owner as an additional insured) covering "claims for damages, other than to the specific portion of the property currently being worked on at the time, because of injury, damage, or destruction of personal property . . . ."

Owner elected not to purchase a separate "builder's risk" policy with coverage limited to the roof work. Instead, Owner chose to rely on its existing "all-risk" property insurance to satisfy its obligations under article 17 to provide property insurance for the Work. Owner did not add Contractors as additional insureds on these policies.

2. *Principles of Contract Interpretation*

The only issue here is the interpretation of the written contract, which interpretation rested solely on the terms of the writing. We may briefly summarize the applicable canons of contract interpretation. ■ In interpreting a contract, the objective intent, as evidenced by the words of the contract, is controlling. (*Titan Group, Inc.* v. *Sonoma Valley County Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].) We interpret the intent and scope of the agreement by focusing on the usual and ordinary meaning of the language used and the circumstances under which

---

[3]All references to articles are to the standard AIA construction contract.

the agreement was made. (*Pietrelli* v. *Peacock* (1993) 13 Cal.App.4th 943, 946 [16 Cal.Rptr.2d 688].)

3.  *The Waiver Clause Applies Because Owner Agreed to Waive All Claims to the Extent Owner Was Paid for the Loss By An Insurance Policy Applicable to the Work*

■    The contract clearly provides: "Owner waive[s] all rights against [Contractors] . . . for damages . . . *to the extent covered by* property insurance obtained pursuant to this Paragraph 17.3 or *other property insurance applicable to the Work.*" (Italics added.) The plain import of the emphasized language is that so long as a policy of insurance "applicable to the Work" pays for the damage, the waiver applies. Appellants do not dispute that their policies (1) were "applicable to the Work" and (2) "covered" or paid for the loss. Satisfaction of these two criteria allows us to conclude the waiver applies.[4]

Although the California courts have not examined or construed this AIA form contract, courts in other jurisdictions have interpreted the effect of this waiver clause under similar circumstances and have reached the same conclusion we reach here. In *Haemonetics Corp.* v. *Brophy & Phillips Co.* (1986) 23 Mass.App. 254 [501 N.E.2d 524], the parties used a similar AIA form which contained section 11.3 (the analogue to art. 17.3) requiring the owner to obtain insurance applicable to the work. The language in the critical "waiver clause" was identical to that contained in the waiver clause here. The owner there chose not to obtain separate insurance (i.e., "property insurance obtained pursuant to this Paragraph") but instead relied on its existing policy (i.e., "other property insurance applicable to the Work"). A fire caused damage to property outside the scope of the Work, and owner's insurer sought to avoid the waiver clause by arguing the owner agreed to insure only the Work and to waive rights to the extent the Work was insured. The court rejected that argument, stating: "The owner argues that § 11.3.1 required only that it maintain insurance on the 'Work,' that § 11.3.6, the waiver clause, applied 'only to the extent covered by insurance obtained

---

[4]We caution that there may have been a different result had Owner procured a specific policy, such as a "builder's risk" policy the protection of which was limited to the Work itself, rather than having relied on appellants' "all-risk" policy to cover the Work. Under such circumstances insurer's "all-risk" property policy might well have contained an exclusion for any coverage for the Work. (See *Southern Cal. Edison Co.* v. *Harbor Ins. Co.* (1978) 83 Cal.App.3d 747, 750-751 [148 Cal.Rptr. 106] ["builder's risk" policy covered ongoing construction project and concurrent "all-risk" policy excluded ongoing construction to the extent such construction was "otherwise insured"].) If appellants' policies did not, by virtue of an exclusion or for other reasons, qualify as a policy "applicable to the Work," any payment of a claim for rain damage would not qualify as proceeds from a policy "applicable to the Work," and therefore might fall outside the ambit of the waiver.

pursuant to . . . § 11.3,' and that there was no waiver, therefore, of the owner's right to sue the contractor and the subcontractor for the loss. The owner may be on firm ground in suggesting that it could have complied with the requirements of § 11.3.1 by acquiring an insurance policy limited to protection of the 'Work.'. . . We need not resolve the issue of the scope of the owner's obligation to acquire insurance for the benefit of the contractor . . . because we think the waiver clause applies to this case regardless of the scope of that obligation. *The preexisting insurance policy . . . was the insurance the owner chose to provide to comply with § 11.3 even though that policy may have been more extensive than what was required. By the terms of § 11.3.6, the waiver of rights extends to the proceeds of any insurance provided under § 11.3.*" (501 N.E.2d at p. 526, italics added.)

Thus, the *Haemonetics* court concluded that the owner, by using its "all-risk" policy to insure the work rather than a separate policy limited to the work, treated the all-risk policy and any proceeds therefrom as proceeds from "insurance provided under" section 11.3 of the AIA form, within the scope of the waiver clause.

The court in *E. C. Long, Inc.* v. *Brennan's of Atlanta* (1979) 148 Ga.App. 796 [252 S.E.2d 642] reached a similar conclusion. The owner and contractor, again using the standard AIA form, entered a contract for the remodeling of a mansion. The owner was, as here, contractually obliged to supply insurance for "the entire Work." The owner instead purchased insurance for the mansion. After fire damaged the building and the insurer paid on the policy, a lawsuit was filed against the builder. The court applied the waiver clause, which, as here, barred claims "to the extent covered by insurance obtained pursuant to" the contractual clause. It rejected the argument that the waiver applied only to the extent the insurance covered the Work, because: "This reasoning ignores the plain wording of the waiver clause: 'Owner and Contractor waive all right against each other for damages caused by fire or other perils *to the extent covered by insurance provided under this Paragraph 11.3. . . .'* (Emphasis supplied.) The waiver clause does not restrict waiver of damages to 'work' but to the proceeds of *any* insurance provided under Paragraph 11.3. . . . The contract required a waiver against the other party to the extent the injured party was reimbursed by insurance." (*E. C. Long, Inc.* v. *Brennan's of Atlanta, supra,* 252 S.E.2d at p. 646, italics in original.)

Thus, several courts have construed identical waiver clauses to bar claims under the same circumstances as are presented here. Appellants, of course, urge a different interpretation. They claim the parties intended to allocate responsibilities for losses among themselves by making Owner responsible for insuring against loss to the project itself and Contractors responsible for

insuring against any other loss under its liability insurance. Appellants therefore argue that the waiver clause must be interpreted as waiving claims only to the extent the loss fell under Owner's area of responsibility (i.e., a loss to the Work), and that losses outside the Work (such as the loss here) would remain Contractors' responsibility. This contention, however, ignores the language defining the scope of claims falling within the waiver clause. The waived claims are *not* defined by what property is harmed (i.e., "any injury to the Work"); instead, the scope of waived claims is delimited by the *source* of any insurance proceeds paying for the loss (i.e., whether the loss was paid by a policy "applicable to the Work").[5]

Appellants argue that we should reject the approach of Massachusetts and Georgia, as represented by *Haemonetics* and *E. C. Long*, and instead follow the "better reasoned opinions" issued by the courts of other states. Specifically, appellants rely on the opinions in *Public Emp. Mut. Ins.* v. *Sellen Const., supra,* 48 Wn.App. 792 [740 P.2d 913], *S.S.D.W. Co.* v. *Brisk Waterproofing Co.* (1990) 76 N.Y.S.2d 228 [557 N.Y.S.2d 290, 556 N.E.2d 1097], and *Travelers Ins. Companies* v. *Dickey* (1990 Okla.) 799 P.2d 625, all of which construed the standard AIA contract and reached the conclusion the intent of the waiver clause was limited to waiving claims to the work, and hence permitted a suit against the contractor for negligent injury to property outside the scope of the work.

We are unpersuaded by these cases, because their holdings appear to be divorced from the language of the waiver clause. In *Sellen*, for example, the court extensively examined the insurance clauses requiring that the Owner maintain insurance on the work and the contractor maintain liability insurance. It concluded the intent of the clauses was to allocate liability depending on the *type of property* (i.e., work or nonwork) that suffered damage. (*Public Emp. Mut. Ins.* v. *Sellen Const., supra,* 740 P.2d at pp. 914-915.) The *Sellen* court then peremptorily decided the waiver must therefore apply only to "damages to the Work." (*Id.* at p. 916.) It simply ignored the fact that the contractual language defined waived claims not by the type of property damaged but by which policy provided indemnification against the loss. (*Ibid.*) Thus, while *Sellen* supports appellants' view, it does so by ignoring the plain import of the language delineating the boundaries of what is waived.

---

[5]We also note that other clauses in the contract show that the parties did *not* intend to exempt *all* injuries to "non-Work" property from waiver. Article 17.3.2 specified that if Owner maintained a policy separate from the policy insuring the project which insured any property "adjoining or adjacent" to the project site, claims for injury to those properties would also be waived unless such injury was caused solely by the negligence of Contractors. Thus, claims for injuries to non-Work property (if insured against and not solely Contractors' fault) would *also* be waived, contrary to appellants' assertion that only damage to the "Work" was intended to be waived.

Similar flaws infect *S.S.D.W. Co.* v. *Brisk Waterproofing Co., supra*, 76 N.Y.2d 228 [556 N.E.2d 1097]. The *S.S.D.W.* court appropriately began its analysis by noting the waiver clause barred the claim "to the extent that the damages sought are covered either by: (1) 'insurance obtained pursuant to [art. 17]' or (2) 'any other property insurance applicable to the Work.'" (*Id.* at p. 233 [556 N.E. at p. 1099].) However, having correctly defined the scope of waiver as being coextensive with coverage afforded by an identified policy (i.e., one applicable to the work), the *S.S.D.W.* court then concluded that waiver was limited by the *nature of the structure* harmed rather than by the *coverage afforded* by the identified policy. Since the *S.S.D.W.* court overlooked the language of the contract and essentially followed *Sellen* (see 76 N.Y.2d at p. 235 [556 N.E. at p. 1101), we find *S.S.D.W.* unpersuasive.[6]

## 4. *Conclusion*

Owner used appellants' policies to provide coverage for the Work under article 17.3. As such, appellants' policies became "other property insurance applicable to the Work." Damages were waived "to the extent covered by . . . other property insurance applicable to the Work." (Art. 17.3.3.) The trial court correctly entered summary judgment in favor of Contractors.

### DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Benke, J., concurred.

---

[6]*Travelers Ins. Companies* v. *Dickey, supra*, 799 P.2d 625 appears even wider of the mark than does *S.S.D.W.* Although the facts in *Dickey* are murky, it appears that while the waiver clause was similar (i.e., waiving claims to the extent covered by insurance) *the policy apparently provided separate coverage for the work.* There, the policy covered (1) the Owner's ownership interest in the real and personal property at the site; (2) the Owner's interest in property of others; and (3) also covered, in a separate section, "Contractors' interest in property covered to the extent of the insured's liability imposed by law." (*Id.* at p. 628.) Under those circumstances, and assuming the waiver was construed as being limited to the extent insurance "applicable to the work" made payment, then payments for damages to nonwork property could be construed as falling outside the scope of the waiver.