Opinion
 

 VOGEL (Miriam A.), J.
 

 This is a subrogation case arising out of a construction contract. Aerojet Electro Systems retained McAlpine & Salyer Construction, Inc. as a general contractor to perform construction work on Aerojet’s property and McAlpine, in turn, retained Davlar Corporation as its welding subcontractor. During construction, a fire at Aerojet damaged McAlpine’s property. McAlpine demanded reimbursement from Sun Insurance Company of New York, its insurer, and was paid about $260,000 by Wm. H. McGee & Co., Inc., Sun’s agent. McAlpine, in turn, assigned all of its claims to McGee. McGee then sued Davlar and its insurer, United States Fidelity and Guaranty Company (USF&G), for subrogation and as McAlpine’s assignee, alleging breach of contract, negligence and related claims (Davlar is the only defendant before us at this time).
 
 [1]
 
 Ultimately, Davlar moved for summary judgment on the ground that McAlpine (McGee’s assignor) had waived its subrogation rights. The trial court denied the motion, and Davlar then filed the within petition for a writ of mandate, asking us to compel the court to grant summary judgment. We issued an order to show cause, stayed trial, received opposition, and set the matter for argument. We now issue the writ as prayed.
 

 Discussion
 

 A.
 

 The general contract entered by Aerojet and McAlpine (a standard AIA form) provided thus; “Waivers of Subrogation. The Owner and Contractor waive
 
 all rights against
 
 (1) each other and
 
 any of their subcontractors,
 
 sub-subcontractors, agents and employees, each of the other, ... for damages caused by fire or other perils to the extent covered by property insurance obtained pursuant to this Paragraph ... or other property insurance applicable to the Work .... A
 
 waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise
 
 . . . .” (Italics
 
 *1124
 
 added.) By the same contract, Aerojet was required to (and did) obtain insurance for the work, and McAlpine agreed to indemnify Aerojet for any loss.
 

 The subcontract between McAlpine and Davlar incorporated the general contract by reference and provided that any conflicts between the two would be controlled by the subcontract. The subcontract is silent on the subject of subrogation (but it does obligate Davlar to indemnify McAlpine and Aerojet for any damage caused by Davlar’s negligence).
 

 B.
 

 Davlar contends the subrogation waiver defeats all of McGee’s claims against Davlar. We agree. The subrogation waiver is plain and unambiguous, and covers all claims that McAlpine, as McGee’s assignor, might otherwise have had against Davlar for breach of contract or negligence.
 
 (Lloyd’s Underwriters
 
 v.
 
 Craig & Rush, Inc.
 
 (1994) 26 Cal.App.4th 1194, 1196, fn. 1 [32 Cal.Rptr.2d 144].)
 
 [2]
 

 We reject McGee’s contention that it is not bound by the subrogation waiver because Davlar was not a party to the general contract. Davlar
 
 was
 
 a party to the subcontract, and that subcontract incorporated the general contract by reference. It follows that the subrogation waiver is binding on McGee.
 
 (Republic Bank
 
 v.
 
 Marine Nat. Bank
 
 (1996) 45 Cal.App.4th 919, 922-925 [53 Cal.Rptr.2d 90] [a provision incorporated by reference is binding on the parties to the contract into which it is incorporated];
 
 Bell
 
 v.
 
 Rio Grande Oil Co.
 
 (1937) 23 Cal.App.2d 436, 440 [73 P.2d 662]; see also
 
 Haemonetics Corp.
 
 v.
 
 Brophy & Phillips Co.
 
 (1986) 23 Mass.App. 254, 255 [501 N.E.2d 524, 525-526].)
 

 We also reject McGee’s contention that there is an inconsistency between the general contract’s subrogation waiver and the subcontract’s indemnity
 
 *1125
 
 provision.
 
 [3]
 
 Clearly, the subrogation waiver applies to claims covered by insurance, the indemnity provision to those that are not covered, and there is no inconsistency between these two distinct provisions. (See
 
 Phoenix Ins. Co.
 
 v.
 
 United States Fire Ins. Co.
 
 (1987) 189 Cal.App.3d 1511, 1525-1526 [235 Cal.Rptr. 185] [subrogation is the substitution of one person in place of another with reference to a claim, whereas indemnity is an obligation resting on one party to make good a loss or damage which another party has incurred]; see also
 
 Lloyd’s Underwriters
 
 v.
 
 Craig & Rush, Inc., supra, 26
 
 Cal.App.4th at page 1198 [construing an identical subrogation waiver in a similar AIA contract to apply where any insurance coverage exists].) Moreover, McGee’s argument ignores the fact that the general contract between McAlpine and Aerojet included both the subrogation waiver
 
 and
 
 an indemnity provision virtually identical to the one included in the subcontract. The existence of both clauses in the same contract confirms our conclusion that they serve different purposes and are
 
 not
 
 inconsistent. (Civ. Code, § 1652;
 
 Estate of Petersen
 
 (1994) 28 Cal.App.4th 1742, 1753-1754, fn. 4 [34 Cal.Rptr.2d 449] [a contract will be interpreted to avoid internal inconsistencies].)
 

 McGee contends “[i]t is a common practice in the construction industry for contractors and subcontractors to enter into contracts having express indemnity agreements, and for contractors to assign their rights under those agreements.” (See, e.g.,
 
 Maryland Casualty Co.
 
 v.
 
 Bailey & Sons, Inc.
 
 (1995) 35 Cal.App.4th 856 [41 Cal.Rptr.2d 519].) We do not disagree. All we are saying is that, as made clear by
 
 Lloyd’s Underwriters
 
 v.
 
 Craig & Rush, Inc., supra, 26
 
 Cal.App.4th 1194, it is equally common practice in the construction industry for contractors and subcontractors to enter into contracts with express subrogation waivers. Subrogation waivers and indemnity provisions are horses of different colors, and we see no inconsistency between the two provisions.
 

 C.
 

 It is immaterial that McGee’s complaint includes claims for breach of contract and negligence as well as equitable subrogation. As McGee clearly recognized when it filed its complaint, its claims against Davlar, whether alleging breach of contract or negligence, are all part and parcel of its subrogation claim. Indeed, the title of the complaint is “Complaint in
 
 *1126
 
 Subrogation for: [H (1) Breach of Contract; [<0 (2) Breach of Implied Covenant of Good Faith and Fair Dealing; fi[] (3) Negligence” and so on. As we recently explained in
 
 Fireman’s Fund Ins. Co.
 
 v.
 
 Wilshire Film Ventures, Inc.
 
 (1997) 52 Cal.App.4th 553 [60 Cal.Rptr.2d 591], an insurer seeking equitable subrogation after it has paid a claim for its insured must establish, among other things, that the insured suffered a loss for which the defendant is liable
 
 either
 
 (a) because the defendant is a wrongdoer whose act or omission caused the loss
 
 or
 
 (b) because the defendant is legally responsible to the insured for the loss caused by the wrongdoer. (See also
 
 Patent Scaffolding Co.
 
 v.
 
 William Simpson Constr. Co.
 
 (1967) 256 Cal.App.2d 506, 509 [64 Cal.Rptr. 187];
 
 Employers etc. Ins. Co.
 
 v.
 
 Pac. Indem. Co.
 
 (1959) 167 Cal.App.2d 369 [334 P.2d 658].) What this means is that McGee recognized the fact that, as part of its subrogation claim, it had to prove that Davlar did something wrong (as in negligence or breach of contract) or at least that McAlpine’s position was equitably superior to Davlar’s position.
 
 (Fireman’s Fund Ins. Co.
 
 v.
 
 Wilshire Film Ventures, Inc., supra,
 
 52 CaI.App.4th at p. 558.)
 

 The bottom line is that the inclusion of these additional “causes of action” adds nothing. McGee’s case against Davlar is for equitable subrogation, a right waived by its assignor. It follows that summary judgment in favor of Davlar should have been granted.
 

 Disposition
 

 Let a peremptory writ of mandate issue commanding the trial court (1) to vacate its order denying Davlar’s motion for summary judgment and (2) to enter summary judgment in favor of Davlar. The parties are to pay their own costs of these writ proceedings.
 

 Ortega, Acting P. J., and Masterson, J., concurred.
 

 A petition for a rehearing was denied April 15, 1997.
 

 [1]
 

 Earlier, the trial court granted summary judgment in favor of USF&G and we affirmed that judgment.
 
 (Wm. H. McGee & Co., Inc.
 
 v.
 
 United States Fidelity and Guaranty Company
 
 (Sept. 5, 1996) B095611 [nonpub. opn.].)
 

 [2]
 

 The subrogation waiver provides that the owner and general contractor “waive all rights against . . . each other and any of their subcontractors, . . . each of the other . . . .” Plainly, this means that everyone waives as to everyone else and not, as McGee contends, only as between the owner and the general contractor. In opposition to Davlar’s motion for summary judgment, McGee nonetheless offered the declaration of McAlpine’s president, to the effect that the subrogation waiver clause “would have been more artfully written if it said the owner and the contractor waive [their] respective rights of subrogation only against each other and their respective subcontractors.” Of course, that is not what it says, and extrinsic evidence is inadmissible to vary the terms of a writing that is a full and complete expression of the parties’ agreement.
 
 (Banco Do Brasil, S.A.
 
 v.
 
 Latían, Inc.
 
 (1991) 234 Cal.App.3d 973, 1002-1003 [285 Cal.Rptr. 870].) For this reason, we disregard all of McGee’s arguments premised on the notion that the subrogation waiver was intended only to regulate-the conduct of the parties to the general contract.
 

 [3]
 

 The indemnity provision holds McAlpine harmless against claims, “demands, liabilities or suits (including all expenses of litigation and legal expenses) for injuries to or the death of any person or persons . . . , or for any loss or damage to the property of any person or persons, including the property of the Owner and Contractor, caused by or resulting from the negligence of [Davlar], or from poor, improper or unworkmanlike performance of any of the work to be performed under this Subcontract. . . .”